# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHERRY J. BULLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-513-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Sherry J. Buller requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 2, 1972, and was forty-two years old at the time of the administrative hearing (Tr. 29). She completed twelfth grade, and has no past relevant work (Tr. 16, 221). The claimant alleges inability to work since March 25, 2000, due to obesity and problems with her feet and legs, including poor circulation (Tr. 220).

## Procedural History

On October 25, 2012, the claimant applied for supplemental benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. The application was denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 24, 2015 (Tr. 10-18). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 416.967(a), in that she could lift/carry ten pounds occasionally and up to ten pound frequently, stand/walk at least two hours in an eight-hour workday, and sit at least six hours in an eight-hour workday. Additionally, he determined that the claimant could no more than occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl (Tr. 14). The ALJ then concluded that although the claimant had no past relevant work to

return to, she was nevertheless not disabled because there was work she could perform in the economy, *i. e.*, food and beverage order clerk, touch-up screener, and document preparer (Tr. 16-17).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly weigh the opinion of Dr. Tracy Baker, and (ii) by failing to account for her obesity. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner must be reversed.

The ALJ determined that the claimant had the severe impairments of obesity, lymphedema in the right lower extremity, left foot deformity, and recently-developed hernia, as well as the non-severe impairments of diarrhea, gout, and depression (Tr. 12). The relevant medical evidence demonstrates that the claimant's foot deformity was a recurring problem, aggravated by walking and standing (Tr. 301). The claimant is approximately four feet nine inches tall, and her weight was recorded at various times as between 300 and 315 pounds, although it was 299 pounds in December 2014 (Tr. 302, 320-370). In May 2014, upon hospitalization related to foot pain, she was offered either crutches or a prescription for a walker or wheelchair (Tr. 304). A January 2015 treating note indicates that the claimant had a waddling gait on the right, with a limp (Tr. 365).

On December 15, 2012, Dr. Tracy Carney conducted a physical consultative examination of the claimant. She noted that the claimant was less than five feet tall, weighed 350 pounds, that she had lymphedema of the right lower extremity and an inverted left foot (Tr. 279). She had a normal gait, with no limp and she did not use an assistive

-4-

device (Tr. 280). Dr. Carney assessed her with supramorbid obesity, low back pain, peripheral neuropathy, and bilateral lymphedema (Tr. 280). On follow up, Dr. Carney described the left foot deformity as severe foot pronation at the pes planus (Tr. 286).

On September 24, 2013, Theresa Horton, Ph.D., conducted a diagnostic interview and mental status examination. As relevant to this appeal, Dr. Horton noted that the claimant walked into the appointment without assistance, but that she had "an awkward gait, walking very slowly," and appeared to sit comfortably "but was breathing heavily following the short walk" (Tr. 297).

On June 21, 2015, Dr. Tracy Baker completed a number of forms opining as to the claimant's RFC (Tr. 384-394). His forms indicate that he met with her one time, for just under half an hour (Tr. 388). Dr. Baker indicated that the claimant would be absent from work three or more days per month due to pain and obesity (Tr. 384, 390). He further indicated that basic physical work activities, including walking and standing, would increase her pain level so that she would inadequately function in tasks or totally abandon them, and he referenced her morbid obesity, idiopathic pain, and neuropathy (Tr. 385). Dr. Baker also checked boxes indicating that the claimant could respond appropriately in most work settings and to stress, but that she would take unscheduled breaks, and could not be expected to attend employment on a sustained basis (Tr. 386-387, 391). Additionally, he checked boxes indicating that the claimant could not stand/walk for up to two hours in an eight-hour workday, and could not lift/carry ten pounds, but that she could sit for six hours in an eight-hour workday and repetitively lift five pounds (Tr. 387). On another form, he indicated that the claimant could walk less than one city block without rest or severe pain,

could sit more than two hours at one time, could stand fifteen minutes at one time, and that she could never crouch/squat, climb ladders or stairs, and rarely twist or stoop/bend (Tr. 389-390). Furthermore, she could stand/walk less than two hours total, and sit at least six hours total, and that she needed to walk around every ninety minutes for five minutes at a time (Tr. 391). Finally, he indicated the claimant used a walker to help support her weight (Tr. 393).

State reviewing physicians found that the claimant was capable of lifting/carrying twenty pounds frequently and ten pounds occasionally, standing/walking up to two hours in an eight-hour workday, and sitting six hours in an eight-hour workday, with additional occasional postural limitations (Tr. 51-52, 61-63). On reconsideration, the reviewing physician cited a notation from a mental status examination indicating that the claimant was breathing heavily following the short walk into the office, but made no comment regarding the claimant's physical RFC (Tr. 63).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence in the record. Other than recounting Dr. Carney's record of the claimant's weight at that examination, he made no mention of the claimant's obesity except to state that, "while claimant suffers from obesity, a recent hernia, and problems with her lower extremities, she should still be able to do sedentary work" (Tr. 15). The ALJ gave Dr. Baker's opinion "some weight but not controlling weight," because he believed she could still perform sedentary work, and could sit and use her upper extremities and hands "without much real difficulty" (Tr. 15). He also noted that she could walk, although slowly and with an awkward gait, watched television and used the computer and internet, and did

"small tasks from a sitting position," and concluded that she could perform "work like activities as long as she can remain seated most of the time" (Tr. 16).

Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The Listing of Impairments with regard to the musculoskeletal system references obesity and explains that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." The ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's residual functional capacity. 20 C.F.R. pt. 404, subpt. P, app. 1, Part A, 1.00 Musculoskeletal System.

In this case, the ALJ found at step two that the claimant suffered from the severe impairment of, *inter alia*, obesity, and cursorily found that none of her impairments met a Listing at step three (Tr. 12-14). The ALJ's analysis of the claimant's obesity at step four, however, falls below the appropriate standards. The uncontested evidence, which the state reviewing physicians found credible (and whose opinions the ALJ gave great weight), indicated that the claimant was short of breath after walking a short distance. Nevertheless, the ALJ indicated that the claimant could stand/walk "at least" two hours in an eight-hour workday (Tr. 14). Rather than evaluate the evidence for the claimant's limitations, the ALJ simply concluded that the claimant "should" still be able to perform sedentary work (Tr. 15). Here, the ALJ has also failed to connect the claimant's obesity to her other impairments for an assessment of additional or cumulative effects. Indeed, given the impact that obesity can have on the ability to walk, the ALJ erred in failing to consider the

effect of her obesity on her left foot deformity and lymphedema of the right lower extremity. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-742 (10th Cir. 2007), *citing* Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *1, *5-*6, *7 (Sept. 12, 2002).

Moreover, pain and fatigue are specifically listed in SSR 02-1p as symptoms of obesity. SSR 02-1p, 2002 WL 34686281, at * 4. Further, SSR 02-1p specifically states that "[i]n cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity" and reiterates that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity" SSR 02-1p, 2002 WL 34686281, at *6. The ALJ, however, wholly failed to analyze the claimant's obesity in conjunction with her multiple other severe impairments and instead seems to have hardly considered her obesity on its own and completely ignored the impact of obesity on the claimant's other severe impairments. *See* SSR 02-1p, 2002 WL 3468281, at *6 ("The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.").

The claimant also asserts that the ALJ erred in his analysis with regard to Dr. Baker's consultative exam, and the Court agrees. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v.*

*United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ provided a summary of Dr. Baker's consultative examination, but failed to conduct the proper analysis, instead asserting that he believed that claimant *must* be able to work if she sat down most of the time, glossing over the fact that his RFC assessment concluded she could stand/walk "at least" two hours in an eight-hour workday. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted].

Because the ALJ failed to properly assess the claimant's RFC at step four, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of March, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**